UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

DIANA MARCELA ARBELAEZ,
on behalf of herself and all others
similarly situated,

        Plaintiff,

v.

CAPITAL ADVANCE SOLUTIONS, LLC,

        Defendant.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff Diana Marcela Arbelaez ("Arbelaez"), individually and on behalf of all others similarly situated, sues Defendant Capital Advance Solutions, LLC ("CAS"), and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demands trial by jury:

**I.
NATURE OF ACTION**

1.  Arbelaez brings this action for damages and other legal and equitable remedies resulting from the illegal actions of CAS in negligently, knowingly, and willfully contacting Arbelaez on her cellular telephone by autodialer without her prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.  CAS is a New Jersey corporation that describes itself as being "dedicated to helping small businesses get the financing they need. ….. Our goal is to get them the money they need quickly and without overwhelming paperwork. Because of our dedication to work out financial solutions for our clients, we have grown dramatically into a leading merchant cash advance and payment processing firm."  http://capitaladvancesolutions.com/about-us/

## II.
## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

4.     CAS is subject to specific personal jurisdiction in Florida under section 48.193(1)(a), Florida Statutes, because the claims here arise out of and are related to CAS's contacts with the Florida, including but not limited to (i) operating, conducting, engaging in, or carrying on a business or business venture in Florida; (ii) committing a tortious act within Florida; and (iii) causing injury to persons or property in Florida arising out of acts and omissions committed while CAS was engaged in solicitation and service activities within Florida.  In particular, by purposely directing thousands of autodialer-initiated telephone calls into Florida, and thus purposefully availing itself of the privilege of conducting such activities in Florida, CAS has sufficient minimum contacts with Florida that it should reasonably anticipate being sued in Florida for claims arising out of or relating to those contacts.

5.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) because, among other things, (1) a substantial part of the events or omissions giving rise to the claim occurred in this District; and (ii) CAS is deemed to reside in this District because it was subject to personal jurisdiction in Florida at the time the action was commenced.

## III.
## PARTIES

6.     Arbelaez is, and at all times material was, a citizen and resident of Miami Dade-County, Florida and a "person" as defined by 47 U.S.C. § 153(10).

7.     CAS is, and at all times material was, a corporation incorporated under the laws of the State of New Jersey, with its principal place of a business in New Jersey, and a "person" as defined by 47 U.S.C. § 153(10).

## IV.
## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## ((TCPA), 47 U.S.C. § 227)

8. In 1991, to address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227. The TCPA regulates, *inter alia*, the use of automated telephone equipment or "autodialers." Specifically, the TCPA prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the party called. 47 U.S.C. § 227(b)(1)(A)(iii).

9. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, such autodialed calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and receiving and addressing such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls whether they pay in advance or after the minutes are used.

## V.
## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

10. Starting on or about July 2015, CAS, by itself or through an intermediary or intermediaries, placed at least one telephone call per week to Arbelaez's cellular telephone ending in 1819 (the "1819 Number").

11. The sources of the telephone calls to the 1819 Number were identified by Arbelaez's cellular carrier as coming from either 305-587-2020 or 630-914-8915 (collectively, the "CAS's Auto Dialers").

12. CAS placed, by itself or through an intermediary or intermediaries, the telephone calls received by Arbelaez at the 1819 Number to solicit her purchase of good and services from CAS relating to business loans.

13. CAS similarly placed, through an intermediary or intermediaries, thousands of these same telephone calls to individuals' cellular telephone numbers, each of which also constituted a solicitation to purchase goods and/or services from CAS.

14. Arbelaez never provided her cellular phone number to CAS.

15. Arbelaez never provided CAS with consent to be contacted via her cellular phone number.

16. Arbelaez has never conducted business with or otherwise formed a business relationship with CAS.

17. All telephone contact by CAS and/or affiliates, subsidiaries, or agents of CAS to Arbelaez's cellular telephone number occurred via an "automated telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(b)(1)(A).  In making these calls to the 1819 Number and to all of the putative class members' numbers, CAS utilized an ATDS because the hardware and software used by CAS have the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention.  CAS's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention).

18. The telephone numbers that CAS and/or affiliates, subsidiaries, or agents of CAS used to contact Arbelaez were assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

19. The complained of telephone calls to the 1819 Number constitute calls not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

20. The complained of telephone calls to the 1819 Number constitute telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

21. The complained of telephone calls to the 1819 Number constitute unsolicited advertisements as defined by 47 U.S.C. § 227(a)(5).

22. Arbelaez never provided "express consent" or any other form of consent allowing CAS and/or affiliates, subsidiaries, or agents of CAS to place telephone calls to Arbelaez's cellular phone by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

23. Under the TCPA, the burden is on CAS to demonstrate that Arbelaez provided express written consent within the meaning of the statute. *See* FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

## VI.
## CLASS ACTION ALLEGATIONS

24. <u>Class Definition</u>. Plaintiff brings this action on behalf of herself, individually, and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" which Plaintiffs seek to represent is comprised of and defined as follows:

> All persons within the United States who received a non-emergency telephone call from CAS, and/or affiliates, subsidiaries, or agents of CAS to a cellular telephone through the use of an automated dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such telephone call(s).

CAS, its employees, and agents are excluded from the Class.

25. Arbelaez reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

26. Arbelaez and all Class members have been impacted and harmed by CAS's acts of and/or the acts of CAS's affiliates or subsidiaries.

27. This Class Action Complaint seeks money damages and injunctive relief.

28. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the ascertainability, numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

29. Upon application by Arbelaez's counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of ascertainability, manageability, justice and/or judicial economy.

30. <u>Ascertainability</u>.  This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed Class are clearly and easily ascertainable and identifiable. The members of the Class can be readily ascertained from CAS's call records, database files and/or business records maintained by CAS and/or their agents, affiliates, and subsidiaries. The Class members can be readily located and notified of this class action.

31. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

32. <u>Typicality</u>. Arbelaez received at least one call using an automated telephone dialing system or an artificial or prerecorded voice, without her prior express consent or a prior established business relationship with CAS within the meaning of the TCPA.  Consequently, Arbelaez's claims are typical of the claims of the members of the Class, and Arbelaez's interests are consistent with and not antagonistic to those of the other Class members he seeks to represent. Arbelaez and all members of the Class have been impacted by, and face continuing harm arising out of, CAS's violations and/or misconduct as alleged herein.

33. <u>Adequacy</u>. As Class representative, Arbelaez has no interest that is adverse to, or which conflicts with, the interests of the absent members of the Class and is able to fairly and adequately represent and protect the interests of such a Class. Arbelaez has raised viable statutory

claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  If necessary, Arbelaez may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

34. <u>Competency of Class Counsel</u>. Arbelaez has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this class action. Undersigned counsel are experienced in handling complex class action claims.

35. <u>Commonality and Predominance</u>.  There are well defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

> a) Whether CAS and/or affiliates, subsidiaries, or agents of CAS made non-emergency calls to Arbelaez and Class members' cellular telephones using an automated telephone dialing system or an artificial or prerecorded voice;
>
> b) Whether CAS and/or affiliates, subsidiaries, or agents of CAS can meet their burden to show CAS obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated) to place the calls complained of;
>
> c) Whether CAS and/or affiliates, subsidiaries, or agents of CAS can meet their burden to show CAS had a prior established business relationship with recipients of the calls complained of;
>
> d) Whether the complained of conduct was knowing and/or willful;
>
> e) Whether CAS is liable for damages, and the amount of such damages;
>
> f) Whether CAS and/or affiliates, subsidiaries, or agents of CAS should be enjoined from engaging in such conduct in the future.

36. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Arbelaez anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

37. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or that would substantially impair or impede the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could establish inconsistent results and result in establishing incompatible standards of conduct for CAS.

38. CAS and/or affiliates, subsidiaries, or agents of CAS have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief

with respect to the Class as a whole appropriate. Moreover, on information and belief, Arbelaez alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VII.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT VIOLATIONS OF THE TELEPHONE
### CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

39. Arbelaez incorporates by reference paragraphs 1 through 38 of this Class Action Complaint as if fully stated herein.

40. The foregoing acts and omissions constitute negligent violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

41. As a result of the alleged negligent violations of 47 U.S.C. § 227, Arbelaez and each member of the Class is entitled to an award of $500 in statutory damages for each and every call placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

42. Arbelaez and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

43. Arbelaez and Class members also seek an award of attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

44. Arbelaez incorporates by reference paragraphs 1 through 38 of this Class Action Complaint as if fully stated herein.

45. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

46. As a result of alleged knowing and/or willful violations of 47 U.S.C. § 227, Arbelaez and each member of the Class is entitled to treble damages of up to $1,500 for each and every call placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

47. Arbelaez and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

48. Arbelaez and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Arbelaez prays for relief and judgment in her favor, as follows:

i) As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Arbelaez seeks for herself and each class member $500 in statutory damages for each and every call that violated the TCPA;

ii) As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Arbelaez seeks for herself and each class member treble damages, as provided by the statute, of $1,500 for each and every call that violated the TCPA;

iii) Injunctive relief prohibiting future violations of the TCPA;

iv) An award of attorneys' fees and costs to counsel for Arbelaez and the Class;

v) An Order certifying the action as a class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Arbelaez is a proper representative of the Class, and appointing undersigned counsel representing Arbelaez as counsel for the Class; and

vi) Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Arbelaez, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  August 21, 2015

Respectfully submitted,

By: /s/  David P. Milian

**CAREY RODRIGUEZ
       MILIAN GONYA, LLP**

David P. Milian, Esq.
Florida Bar No. 844421
dmilian@careyrodriguez.com
Frank S. Hedin, Esq.
Florida Bar No. 109698
fhedin@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475